mp/agreed final order/9-25-07

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 07-12145 |
| PAUL H. SCHWENDENER, INC., et al, | ) | (Jointly Administered) |
| | ) | Honorable Eugene R. Wedoff |
| Debtors. | ) | Hearing Date: September 25, 2007 |
| | ) | Hearing Time: 10:00 a.m. |

## AGREED FINAL ORDER AUTHORIZING
## DEBTOR TO USE CASH COLLATERAL

This case having come before the Court for final hearing on the motion ("Motion")[1] of M.P. Associates L.P. (the "Debtor") requesting the entry of an order, pursuant to 11 U.S.C. §362(c)(2) and Fed. R. Bankr. P. 4001(b), due and proper notice of the Motion having been provided; this Court having previously entered an Interim Order dated July 11, 2007, and a Second Interim Order dated July 25, 2007, authorizing the Debtor's use of cash collateral pending a final hearing on the Debtor's Motion; and Now, Therefore, it is **ORDERED** as follows:

1. The Motion is granted to the extent provided for herein.

2. Subject to the terms and conditions of this Final Order, the Debtor is authorized to use cash collateral during the period September 29, 2007, through and including December 28, 2007 (the "Initial Budget Expiration Date"), to the extent set forth in the Budget attached hereto as Exhibit A, unless otherwise agreed to in writing by Midwest Bank & Trust Company ("Midwest"). Thereafter, the Debtor's authority to use cash collateral subject to the terms and conditions of this Order shall be extended for successive three-month periods (the last business day of each such three-month period being hereinafter referred to as the "Budget Expiration

---

[1] Unless other defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

Date"), provided, however, that: (a) not less than fourteen (14) days prior to the Initial Budget Expiration Date and each successive Budget Expiration Date, the Debtor submits a proposed Budget for such three-month period to Midwest; and (b) within seven (7) days of its receipt of the proposed Budget, Midwest consents in writing to the Debtor's continued use of cash collateral beyond the Initial Budget Expiration Date or successive Budget Expiration Date, as the case may be. If Midwest consents to the Debtor's continued use of cash collateral, the Debtor shall immediately file the Budget approved by Midwest with the Court.

3. In return for the Debtor's use of cash collateral, Midwest is granted the following adequate protection for its asserted secured interests:

(a) Midwest is granted a postpetition lien on the Debtor's rents, leases, and other cash collateral to the same extent, and in the same priority, as Midwest's prepetition lien therein.

(b) The Debtor shall maintain current insurance coverage in full force and effect on the Shopping Center and any other of the Debtor's assets subject to a lien of Midwest. The Debtor shall provide Midwest with a certificate or other proof of insurance naming Midwest as an additional insured/loss payee.

(c) The Debtor shall provide Midwest reasonable access to the Shopping Center for the purpose of inspecting its collateral and reasonable access to the Debtor's books and records. In addition, the Debtor shall provide Midwest on a prompt and timely basis with such additional specific documents and financial information as Midwest or its counsel may reasonably request, including periodic accountings of actual income and expenditures on a line item basis corresponding with the Budget attached hereto as Exhibit A and each successive Budget approved by Midwest and filed with the Court.

(d) The Debtor shall make monthly provisional adequate protection payments to Midwest from the Shopping Center's rents on the 26th day of each month, beginning on October 26, 2007, in an amount equal to the net monthly rental income available after payment of the Shopping Center's monthly operating expenses in accordance with the Budget attached hereto as Exhibit A and each successive Budget approved by Midwest and filed with the Court.

  (e) The Debtor shall make monthly deposits for the payment of real estate taxes, in accordance with the attached Budget and each successive Budget, into the special reserve account (the "Tax Reserve Account") opened and maintained by the Debtor for such purposes at Downers Grove Bank, and the Debtor shall provide Midwest with copies of the periodic bank statements for the Tax Reserve Account as and when such statements are received by the Debtor.

  4. Nothing in this Order shall constitute a finding as to the nature, extent, enforceability or allowability of the alleged claim of Midwest or the liens asserted thereby in cash collateral or otherwise in any other assets of MP Associates' estate, nor shall it constitute a waiver of MP Associates' right to contest the same.

  5. Nothing contained in this Final Order or in any prior Interim Order shall constitute or be construed as a determination or finding by the Court, or an acknowledgement, concession, or agreement by Midwest, that: (a) Midwest's interests in the cash collateral are "adequately protected" within the meaning of sections 361 and 363 of the Bankruptcy Code, or that (b) Midwest is not entitled to different or additional adequate protection for continued use of the cash collateral by the Debtor.

  6. Nothing in this Final Order or in any prior Interim Order shall in any way prejudice, compromise, diminish, or impair any of Midwest's asserted rights, liens, security interests, claims, defenses, or remedies, including, without limitation, any rights or claims that Midwest may have or assert against any persons or entities other than the Debtor, and nothing contained herein shall operate or be construed to limit in any way Midwest's right to seek at any time different or additional relief herein, including, without limitation, relief from the automatic stay.

  7. The Debtor's right to use cash collateral under this Order shall cease and terminate immediately, without further notice, upon the earliest of the following: (a) the entry of

an order dismissing the Debtor's Chapter 11 case or converting the case to a case under Chapter 7 of the Bankruptcy Code; (b) the entry of an order appointing a trustee in this case under section 1104 of the Bankruptcy Code; (c) the closing of a sale of the Shopping Center (except that the Debtor may use the sale proceeds to pay any costs and expenses of sale to the extent authorized by the Court in the Order approving such sale); and (d) the Initial Budget Expiration Date, or any successive Budget Expiration Date, unless Midwest has consented in writing to the Debtor's continued use of cash collateral as required by Paragraph 2 of this Order.

8. Midwest also shall have the right to move for the immediate termination of the Debtor's authority to use cash collateral under this Final Order two (2) days after Midwest serves the Debtor and its counsel with written notice that the Debtor has failed to perform or comply with any of the terms and conditions set forth in Paragraph 3(a)-(e) above.

Dated: 9-25-07

ENTER: _____
JUDGE

August A. Pilati, Esq. (03125503)
Gesas, Pilati, Gesas and Golin, Ltd.
53 West Jackson Boulevard, Suite 528
Chicago, Illinois 60604
(312) 726-3100
Representing Midwest Bank and Trust Company

and

William J. Serritella, Jr. (6210001)
John M. Riccione (06209375
Aronberg Goldgehn Davis & Garmisa
330 N. Wabash Avenue – Suite 3000
Chicago, Illinois 60611
(312) 828-9600
Representing Midwest Bank and Trust Company

Steven B. Towbin, Esq. (2848546)
Allen J. Guon, Esq. (6244526)
Shaw Gussis Fishman Glantz
Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL 60610
Ofc: 312-980-3806
Representing the Debtor

4

## M. P. ASSOCIATES L.P. BUDGET
### OCTOBER - DECEMBER, 2007

|  |  | Oct-07 | Nov-07 | Dec-07 |
|---|---|---:|---:|---:|
| **REVENUE*** |  |  |  |  |
| Base Rent |  | $26,300.00 | $26,300.00 | $26,300.00 |
| Real Estate Taxes |  | $3,050.00 | $3,050.00 | $3,050.00 |
| Insurance |  | $250.00 | $250.00 | $250.00 |
| Common Area Maintenance |  | $2,850.00 | $2,850.00 | $2,850.00 |
| No Revenue is Added for Vacant Space |  | $0.00 | $0.00 | $0.00 |
|  | TOTAL | $32,450.00 | $32,450.00 | $32,450.00 |
|  |  |  |  |  |
| **EXPENSES*** |  |  |  |  |
| Insurance |  | $800.00 | $800.00 | $800.00 |
| Landscaping |  | $250.00 | $200.00 | $0.00 |
| Litter Control |  | $350.00 | $350.00 | $350.00 |
| Management Fee |  | $2,500.00 | $2,500.00 | $2,500.00 |
| Professional Fees (ordinary course) |  | $800.00 | $800.00 | $800.00 |
| Real Estate Taxes |  | $8,700.00 | $8,700.00 | $8,700.00 |
| Repairs, Maintenance & Janitorial Service |  | $3,200.00 | $3,200.00 | $3,200.00 |
| Scavenger |  | $550.00 | $550.00 | $550.00 |
| Security |  | $100.00 | $100.00 | $100.00 |
| Snow Removal |  | $0.00 | $500.00 | $800.00 |
| Utilities (Electricity, Gas, Water) |  | $2,400.00 | $2,400.00 | $2,400.00 |
| Miscellaneous |  | $1,000.00 | $1,000.00 | $1,000.00 |
| U. S. Trustee Fees |  | $1,250.00 | $0.00 | $0.00 |
|  | TOTAL | $21,900.00 | $21,100.00 | $21,200.00 |
|  |  |  |  |  |
| Provisional Adequate Protection Payment to Midwest |  | $10,550.00 | $11,360.00 | $11,250.00 |

* All line items are subject to a variance of +/- 10%.

EXHIBIT A